UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRINA JOSEPH                                      CIVIL ACTION

VERSUS                                            NO. 22-1333

CITY OF NEW ORLEANS, ET AL.                       SECTION: D (4)

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by the Plaintiff, Trina Joseph,[1] and a Motion to Dismiss *Monell* Claims Pursuant to Rule 12(c) and Motion for Summary Judgment on All Claims filed by the Defendants, the City of New Orleans, NOPD Officer Tomeka Anderson, NOPD Sergeant James N. Kjellin, NOPD Officer Latrell Washington,[2] and Shaun Ferguson.[3] Both Motions are opposed.[4] The Defendants have filed a Reply in support of their Motion.[5] The Cross-Motions for Summary Judgment are fully briefed. After careful review of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Defendants' Motion to Dismiss and Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Partial Summary Judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This is a civil rights action concerning the adequacy of the arrest warrant affidavit for Plaintiff Trina Joseph ("Plaintiff") for the alleged September 21, 2021

---

[1] R. Doc. 29.
[2] Detective Latrell Washington Boutte was mistakenly referred to as Latrell Washington in Plaintiff's First Amended Complaint. Washington is Detective Boutte's maiden name. *See* R. Doc. 30-6, *Deposition of Latrell Boutte* ("*Boutte Depo.*"), at 5:7–24.
[3] R. Doc. 30.
[4] R. Doc. 31 (Plaintiff's Opposition); R. Doc. 32 (Defendants' Opposition).
[5] R. Doc. 38.

theft of the personal property of her son-in-law, Miguel Bailey ("Bailey").[6]  On September 15, 2021, an arrest warrant was issued for Bailey on a charge of misdemeanor domestic abuse for Bailey's alleged abuse of his wife, Nikki Joseph ("Joseph"), the daughter of Plaintiff.[7]  A few days later, on September 20, 2021, Officer Tomeka Anderson ("Officer Anderson" or "Anderson"), a Senior Police Officer of the New Orleans Police Department ("NOPD"), along with several other NOPD officers, responded to a call concerning a dispute at the New Orleans home of Bailey and Joseph.[8]  NOPD officers arrested Bailey pursuant to the outstanding warrant for domestic violence charges and took him into custody where he would remain until September 22, 2021.[9]

After Bailey was released from jail on September 22, 2021, Bailey called NOPD to escort him into his house so that he could retrieve his property from his residence, in compliance with the terms of Joseph's domestic protective order.[10]  Officer Anderson responded to the call and arrived at Bailey's home to escort him as he collected his belongings.[11]  Shortly after Officer Anderson arrived, Bailey informed Officer Anderson that several of his belongings had been stolen by the Plaintiff, including several pairs of tennis shoes, his personal documents, a laptop, and a PlayStation.[12]  Bailey initially told Officer Anderson that he had seen Plaintiff

---

[6] *See* R. Doc. 30-4, *Affidavit for Arrest Warrant for Trina Joseph* ("*Joseph Affidavit*"), at pp. 6–7.
[7] *See* R. Doc. 29-5, *Affidavit for Arrest Warrant for Miguel Bailey*.
[8] *See* R. Doc. 32-3, *Deposition of Officer Tomeka Anderson* ("*Anderson Depo.*"), at 39:2–25.
[9] *See id.* at 41:10–17. *See generally* R. Doc. 29-7, *Body Camera Footage from Arrest of Miguel Bailey on September 20, 2021* ("*Bailey Arrest Video*").
[10] *See* R. Doc. 32-3, *Anderson Depo.*, at 44:14–25, 45:1–14.
[11] *See id.*
[12] R. Doc. 29-13, *First Segment of Body Camera Footage from Officer Anderson on September 22, 2021* ("*First Anderson Video*"), at 5:50–6:50.

entering his home the day before on his phone via video from the Ring camera system located on his front door.[13]   As Officer Anderson entered Bailey's home, Bailey pointed out the mount on the front door for the Ring camera.[14]   Although no Ring camera was on the mount at the time, what appears to be a Ring camera can be seen on the mount less than forty eight hours before in the officer body camera footage from the September 20, 2021 arrest of Bailey.[15]   Officer Anderson entered the residence and asked Bailey to confirm that his items were missing.[16]   Bailey then proceeded to show Officer Anderson where he normally kept the items.[17]   Officer Anderson watched as Bailey unsuccessfully conducted a search of his residence for the missing items.[18]

Officer Anderson then returned to her vehicle to call Nikki Joseph, Bailey's estranged wife, and ask her if she knew anything about Bailey's missing items.[19] Joseph denied having any knowledge of the whereabouts of her husband's property and also informed Officer Anderson that she was missing several items as well.[20] Following that call, Officer Anderson contacted NOPD Detective Latrell Boutte ("Detective Boutte") and informed her of the situation and of the possible theft.[21] Officer Anderson then spoke with a different person at NOPD and stated that she believed that Bailey's claim that he personally saw Plaintiff stealing his things on his

---

[13] *Id.* at 6:10.
[14] *Id.* at 7:28.
[15] *See* R. Doc. 29-7, ("*Bailey Arrest Video*"), at 4:00.
[16] R. Doc. 29-13, *First Anderson Video*, at 8:05.
[17] *Id.* at 8:45.
[18] *Id.*
[19] *Id.* at 12:30–19:45.
[20] *Id.* at 17:50–19:45.
[21] *Id.* at 20:30–21:57.

phone was "questionable" because Bailey was incarcerated at the time of the incident.[22]  Officer Anderson then left the scene for a short time.[23]

By the time Officer Anderson returned to Bailey's residence, Detective Boutte had already arrived on the scene and was questioning Bailey inside of his home.[24] When Detective Boutte mentioned issuing an arrest warrant for Plaintiff, Officer Anderson explained that such a warrant would be inappropriate because she had not yet seen any of the claimed video evidence.[25]  Bailey then explained that while he was in jail, his sister, Brandi Morton ("Morton"), had possession of his phone and was the one who saw the Ring camera footage of Plaintiff entering Bailey's home.[26]  Officer Anderson and Detective Boutte instructed Bailey to contact his sister and tell her to come to Bailey's residence so that she could be interviewed by the officers.[27]

While waiting for Morton to arrive, Officer Anderson called Plaintiff to ask her about Bailey's accusations that she had stolen the items.[28]  Plaintiff did not answer.[29] Officer Anderson then called Nikki Joseph, Bailey's estranged wife and Plaintiff's daughter, again to tell her that she had tried to contact her mother, Plaintiff, and asked Joseph to reach out to Plaintiff to inform her of the situation.[30]  Officer

---

[22] *Id.* at 24:30.
[23] The first segment of Officer Anderson's body camera footage, R. Doc. 29-13, ends at time stamp 18:54:43.  The second segment, R. Doc. 29-14, picks up at time stamp 19:03:24.
[24] R. Doc. 29-14, *Second Segment of Body Camera Footage from Officer Anderson on September 22, 2021* ("*Second Anderson Video*"), at 1:45.
[25] *Id.* at 6:15.
[26] *Id.* at 6:24.
[27] *Id.* at 6:20–6:58.
[28] *Id.* at 8:57–10:27.
[29] *Id.* at 10:15.
[30] *Id.* at 11:33–13:21.

Anderson then further communicated with NOPD personnel regarding the situation and had Bailey list all of the items that he believed he was missing.[31]

A short while later, Bailey's sister, Morton, arrived on the scene.[32]  Morton explained that she possessed Bailey's phone while he was in jail and that she was paying attention for Ring camera alerts notifying that someone was at the front door because Bailey was expecting a package in the mail.[33]  Morton stated that sometime between one and two in the afternoon of the previous day—September 21, 2021—she saw Plaintiff appear on the Ring camera at the front door of Bailey's residence carrying Bailey's tennis shoes.[34]  Morton identified Plaintiff by name.[35]  Morton then told Officer Anderson that she saw Plaintiff go in and out of Bailey's house numerous times carrying boxes and bags.[36]  According to Morton, Plaintiff was wearing a hat, a dark-colored shirt, and shorts.[37]  After speaking with Morton, Officer Anderson advised that she intended to seek a warrant for Plaintiff's arrest.[38]

At approximately 7:44 p.m. that same day, Officer Anderson called Plaintiff once again—successfully reaching her this time—and told Plaintiff that she had been seen on camera removing Bailey's items from his residence.[39]  Plaintiff denied the accusations, claiming that she had never gone to the house, that Bailey was trying to

---

[31] *Id.* at 24:10–29:10.

[32] *Id.* at 31:50.

[33] *Id.* at 34:10–34:22.

[34] *Id.* at 34:30–34:43; 35:00.

[35] *Id.* at 34:24; 35:41.

[36] *Id.* at 35:05–35:15.

[37] *Id.* at 35:48–35:58.

[38] *Id.* at 37:16.

[39] *Id.* at 40:54–41:20.

frame her, and that she had been with a lawyer at the time of the alleged theft.[40] Although Plaintiff offered to give Officer Anderson the contact information of the lawyer that she was allegedly meeting with, Plaintiff did not provide the name of the attorney or the location of the attorney's office.[41]  Plaintiff further advised that she had been at Children's Hospital earlier in the day and then had gone straight to her lawyer's office after that.[42]  Officer Anderson then asked Plaintiff if she could recall what she was wearing the day prior.[43]  Plaintiff repeatedly refused to answer Officer Anderson's question, instead demanding that Officer Anderson tell Plaintiff what Plaintiff had been wearing.[44]  After several minutes of back and forth, Plaintiff finally claimed that she had been wearing black pants, a black and gold shirt, and curlers in her hair.[45]  Plaintiff also mentioned that she had been at Whole Foods Market the day prior.[46]  Officer Anderson concluded the conversation by telling Plaintiff that she would be in contact with her supervisor about whether a warrant would issue for the Plaintiff's arrest.[47]

Less than a half hour later, Officer Anderson called Plaintiff once more.[48] Although this call was not recorded on Officer Anderson's body camera, a partial recording of the call was made by Plaintiff.[49] During this conversation, Plaintiff spoke

---

[40] *Id.* at 41:20–43:15; 43:30.

[41] *Id.* at 43:20.

[42] *Id.* at 44:00.

[43] *Id.* at 44:38; 45:38.

[44] *Id.* at 44:40–49:30.

[45] *Id.* at 49:31.

[46] *Id.* at 50:29.

[47] *Id.* at 50:40.

[48] Plaintiff alleges that Officer Anderson called her at approximately 8:20 p.m.  *See* R. Doc. 29-4, *Declaration of Trina Joseph*, at ¶ 32.

[49] R. Doc. 29-12; R. Doc. 30-6, *Deposition of Trina Joseph* ("*Joseph Depo.*"), at 94:1–4.

with Officer Anderson about how her daughter, Nikki Joseph, had recently lost her truck on the side of the road and how Plaintiff had been driving around looking for the car.[50]  Plaintiff once again denied having taken any of Bailey's property from his residence.[51]  Officer Anderson explained that Plaintiff "would have to have [her] lawyer or whoever [she] was with to vouch for [her]" as to her alibi.[52]  Officer Anderson also explained that "[i]t's just your word against the witness' word and everybody else's word."[53]

After the subsequent call with Plaintiff, Officer Anderson began drafting the Affidavit for Arrest Warrant for Plaintiff.[54]  Officer Anderson spoke with her supervisor, Sergeant James Kjellin ("Sergeant Kjellin") about the matter.[55]  Sergeant Kjellin, as per his duties as Officer Anderson's supervisor, reviewed and approved the affidavit.[56]  In the affidavit, Officer Anderson stated that there was probable cause to believe that Plaintiff had committed felony theft in violation of La. R.S. 14:67 on September 21, 2021.[57]  Officer Anderson's affidavit included the following information:

> On Wednesday, September 22, 2021, Officer Tomeka Anderson met with Brandy Morton (B/F [dob redacted]). Ms. Morton informed Officer Anderson that on Tuesday, September 21, 2021, at about 1PM, she observed Ms. Trina Joseph (B/F [dob Redacted]), on the Ring doorbell camera entering the residence at [redacted] Inwood Ave.  Ms. Morton used her brothers' [sic] cell phone to live stream the

---

[50] R. Doc. 29-12 at 0:00–0:30.

[51] *Id.* at 2:18.

[52] *Id.* at 2:26–2:30.

[53] *Id.* at 4:15–4:18.

[54] R. Doc. 30-4, *Joseph Affidavit*, at pp. 6–7.

[55] R. Doc. 32-3, *Anderson Depo.*, at 68:7–8.

[56] *See* R. Doc. 30-4, *Joseph Affidavit*, at p. 7; R. Doc. 32-3, *Anderson Depo.*, at 22:18–23.

[57] *See* R. Doc. 30-4, *Joseph Affidavit*, at p. 6.

footage. Ms. Morton observe [sic] Ms. Joseph exit the home with several of her brothers [sic] shoe boxes and bags of his personal items. Ms. Morton was able to identify Ms. Joseph by name and stated she had on a dark colored shirt with black shorts.

The property located at [redacted] Inwood belonged to Mr. Miguel Bailey and his wife, Nikki Joseph. Officer Anderson met with Mr. Joseph [sic] and conducted a walk through of the residence to locate his property but to no avail. Officer Anderson reached out to Ms. Nikki Joseph about the property which was missing from the residence and stated she didn't know anything about Mr. Bailey's missing items.[58]

At 9:19 PM on September 22, 2021, Orleans Parish Magistrate Commissioner Robert Blackburn signed the warrant for the arrest of Plaintiff.[59] On October 20, 2021, Plaintiff turned herself in on the warrant.[60] The charges against Plaintiff were subsequently refused by the Orleans Parish District Attorney's Office.[61]

On May 13, 2022, Plaintiff filed suit against Defendants Anderson, NOPD Officer 1,[62] and Sergeant Kjellin under 42 U.S.C. § 1983 for alleged violations of her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and state law claims against those same Defendants for false arrest, wrongful/malicious prosecution, and intentional infliction of emotional distress and claims under the Louisiana Constitution.[63] Plaintiff also asserted a § 1983 *Monell* cause of action against Defendants City of New Orleans and Superintendent Shaun

---

[58] *Id.* at pp. 6–7.
[59] *Id.* at pp. 7–8.
[60] *See* R. Doc. 29-19 at p. 2; R. Doc. 30-6, *Joseph Depo.*, at 104:6–8.
[61] *See* R. Doc. 29-20.
[62] In her First Amended Complaint, Plaintiff replaced all references to "NOPD Officer 1" with "NOPD Officer Latrell Washington." *See* R. Doc. 19. As noted earlier, *see* n. 2, the correct name is Latrell Boutte.
[63] R. Doc. 1 at ¶¶ 38, 40.

Ferguson for the alleged violations of Plaintiff's constitutional rights in addition to state law claims for negligent hiring, failure to train, and respondeat superior against those same Defendants.[64]  Plaintiff later filed a First Amended Complaint making minor corrections to her first complaint.[65]  The Defendants answered both of Plaintiff's complaints, denying the allegations and affirmatively invoking the defense of qualified immunity.[66]

In Plaintiff's Motion for Partial Summary Judgment, Plaintiff contends that judgment should be entered in her favor as to her § 1983 claim against Officer Anderson for false arrest and liability under *Franks* for violation of her Fourth Amendment rights.[67]  Plaintiff does not move for summary judgment on any of her other claims against any other Defendant.  Plaintiff argues that the undisputed facts show that Officer Anderson "failed to include substantial exculpatory information that was known to her in the affidavit she prepared when applying for an arrest warrant for the Plaintiff."[68]  According to Plaintiff, had Officer Anderson included certain allegedly exculpatory details in her affidavit for arrest warrant, probable cause would not have existed to issue the warrant.[69]  Specifically, Plaintiff points to Officer Anderson's alleged failure to include certain information concerning the reliability of Bailey and Morton as witnesses and details regarding Plaintiff's claimed alibi defense.[70]  The Defendants filed a response in opposition to Plaintiff's motion,

---

[64] *Id.* at ¶¶ 39, 41–42.
[65] R. Doc. 19.
[66] R. Doc. 10; R. Doc. 23.
[67] R. Doc. 29.
[68] R. Doc. 29 at p. 1.
[69] *Id.*
[70] *See* R. Doc. 29-1 at pp. 20–21.

making the same arguments as they did in their own Motion for Summary Judgment, addressed below.[71]

The Defendants filed as one motion a Motion to Dismiss *Monell* Claims Pursuant to Rule 12(c) and Motion for Summary Judgment on All Claims.[72]  In support of Defendants' Rule 12(c) Motion, the Defendants contend that Plaintiff fails to sufficiently allege a § 1983 cause of action against a municipality under *Monell v. New York City Department of Social Services*[73] because Plaintiff fails to demonstrate that the City of New Orleans exhibited "deliberate indifference to the rights of persons with whom the police come into contact."[74]  In response, Plaintiff concedes that she has no valid *Monell* claim against the City of New Orleans or Superintendent Ferguson and that the claims against those parties should be dismissed.[75]  The Court therefore focuses on the remainder of Defendants' Motion for Summary Judgment.

In their Motion for Summary Judgment, the Defendants seek dismissal of all claims, both state and federal, against all Defendants.[76]  The Defendants contend that Plaintiff's § 1983 claim fails as a matter of law because there was probable cause for her arrest and because the Defendants did not omit material information from the warrant affidavit for Plaintiff's arrest so as to trigger liability under *Franks v. Delaware*.[77]  Plaintiff's *Franks* claim fails, Defendants allege, because even if the purportedly exculpatory information had been included in the affidavit, there would

---

[71] *See* R. Doc. 32.
[72] R. Doc. 30.
[73] 436 U.S. 658 (1978).
[74] *See* R. Doc. 30-1 at pp. 4–7.
[75] *See* R. Doc. 31 at p. 1.
[76] *See* R. Doc. 30-1 at p. 2.
[77] *See id.* at pp. 13–16; 438 U.S. 154 (1978).

still have been probable cause to believe that Plaintiff had committed an offense.[78] Defendants also argue that Plaintiff has presented no evidence suggesting that the Defendants acted with the requisite malintent to warrant liability under *Franks*.[79] Accordingly, Defendants maintain that they are entitled to qualified immunity due to Plaintiff's failure to demonstrate a violation of her constitutional rights.[80]  Because Plaintiff cannot demonstrate a violation of her Fourth Amendment rights, Defendants also contend that they are entitled to summary judgment on Plaintiff's state law claims.[81]  Alternatively, the Defendants argue that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c) if the Court chooses to dismiss Plaintiff's federal claims.[82]

Plaintiff opposes the Defendants' Motion, providing much of the same argument in response as she does in her own Motion for Summary Judgment.[83] Plaintiff concedes that her claims against Detective Boutte should be dismissed but opposes summary judgment as to her claims against the other Defendants.[84]  Plaintiff contends that there is a genuine factual dispute concerning what Officer Anderson told her supervisor, Sergeant Kjellin, before he approved Officer Anderson's affidavit.[85]  Plaintiff argues that the accounts of Officer Anderson and Sergeant

---

[78] *See* R. Doc. 30-1 at pp. 13–16
[79] *See id.* at p. 18.
[80] *See id.* at pp. 16–18.
[81] *See id.* at pp. 19–21.
[82] *See id.* at p. 21.
[83] R. Doc. 31.
[84] *See id.* at p. 1.
[85] *See id.*

Kjellin differ as to what information Officer Anderson provided to Sergeant Kjellin before the warrant was issued.[86]  According to Plaintiff, this factual dispute precludes summary judgment as to Sergeant Kjellin.[87]  As to the merits of her § 1983 claims and state claims, Plaintiff again argues that the Defendants omitted material information from the warrant affidavit in violation of the Fourth Amendment under the holding of *Franks*.[88]

In their Reply, Defendants argue that Plaintiff's opposition relies on facts irrelevant to the probable cause analysis and unknown to the Defendants at the time of the affidavit.[89]  Defendants contend that Plaintiff's arguments that she is not guilty of the crime misses the mark as the relevant inquiry is whether the Defendants had probable cause for her arrest.[90]  Defendants maintain that none of the information that was omitted from the affidavit would undermine probable cause.[91]  Finally, the Defendants take issue with Plaintiff's characterization of Sergeant Kjellin's testimony and attempt to create a factual dispute where none exists.[92]

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[93]  A dispute is "genuine" if it is

---

[86] *See id.* at pp. 23–25.

[87] *See id.*

[88] *See id.* at pp. 14–23.

[89] R. Doc. 38.

[90] *Id.*

[91] *See id.* at pp. 4–7.

[92] *See id.* at p. 7.

[93] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"real and substantial, as opposed to merely formal, pretended, or a sham."[94]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[95]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[96]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[97]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[98]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[99]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[100]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue,

---

[94] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[95] *Liberty Lobby*, 477 U.S. at 248.

[96] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[97] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[98] *Id*. at 399 (citing *Liberty Lobby*, 477 U.S. at 248).

[99] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

[100] *Id*. at 1265.

the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[101]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[102]  "When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video."[103] However, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account."[104]

"A qualified immunity defense alters the usual summary judgment burden of proof."[105]  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[106]  However, when considering a qualified immunity defense, the court must still view the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor.[107]

---

[101] *See Celotex*, 477 U.S. at 322–23.
[102] *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).
[103] *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)).
[104] *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018) (citing *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)).
[105] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).
[106] *Id*.
[107] *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993).

## III.   ANALYSIS

The Court begins by addressing the threshold summary judgment inquiry of whether a genuine dispute of material fact exists.  In her Motion, Plaintiff contends that there are no disputed facts regarding Officer Anderson and that only a "strictly legal question [is] presented to the Court."[108]  Defendants concur, stating that this case presents no conflicting factual accounts or any disputed factual issues.[109] Somewhat puzzlingly, in her response to Defendants' Motion, Plaintiff argues for the first time that a factual dispute exists as to Sergeant Kjellin.[110]  According to Plaintiff, Sergeant Kjellin's account of what information he knew at the time he approved the warrant affidavit differs from what Officer Anderson alleged that she told Sergeant Kjellin.[111]  To the extent that there is a dispute as to exactly what information Officer Anderson relayed to Sergeant Kjellin, the Court finds that factual dispute to be immaterial.  As the Court explains below, none of the information known to Officer Anderson and omitted from the warrant affidavit negates a finding of probable cause were it to be added to the affidavit.  Thus, whether or not Officer Anderson informed Sergeant Kjellin of the full extent of this omitted information is irrelevant because the Plaintiff still cannot carry her burden to prove liability under *Franks*.  Because this factual dispute would not "affect the outcome of the suit under the governing law,"[112] the Court finds there to be no genuine dispute of material fact in this matter.

---

[108] R. Doc. 29-1 at p. 1.
[109] *See* R. Doc. 32 at p. 14; *see also* R. Doc. 30-1 at p. 2.
[110] *See* R. Doc. 31 at pp. 1, 23–25.
[111] *See id.* at pp. 23–25.
[112] *Liberty Lobby*, 477 U.S. at 248.

At the heart of the matter, the dispute in this case centers on whether the undisputed facts support a finding of probable cause for Plaintiff's arrest or not, a purely legal determination.

### A. Section 1983 Claims

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.  Specifically, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[113]

Because § 1983 merely provides a remedy for designated rights without creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[114]  To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) by a state actor; (3) that occurred under color of state law.[115]

As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[113] 42 U.S.C. § 1983.
[114] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[115] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

have known."[116]  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[117]  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[118]  "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[119]  "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[120]  Once the government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[121]

To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[122]  Put differently, a government official's liability "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."[123]  It is within the district courts' discretion to decide which

---

[116] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[117] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[118] *Id*. at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted)).
[119] *Brumfield v. Hollins*, 551 F.3d 322, 326–27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).
[120] *Bazan*, 246 F.3d at 488 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted)).
[121] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).
[122] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[123] *Anderson*, 483 U.S. at 639.

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.[124]   Because a plaintiff's failure to demonstrate a violation of their constitutional rights ends the qualified immunity inquiry, the Court first addresses whether the Plaintiff has demonstrated that the Defendants violated her right against unreasonable seizure under the Fourth Amendment.[125]

### 1. *Franks* Liability

Plaintiff contends that Officer Anderson, Detective Boutte,[126] and Sergeant Kjellin violated her Fourth Amendment right against unreasonable seizure by omitting material exculpatory information from the arrest warrant affidavit, precluding review by the magistrate judge of all facts material to the existence of probable cause for her arrest.  Plaintiff argues that probable cause to arrest her would not have existed had Officer Anderson included certain allegedly exculpatory details in her warrant affidavit.

Normally, under the independent intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[127]   That is, police officers are generally not liable

---

[124] *Pearson*, 555 U.S. at 236.

[125] *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

[126] In her response to Defendants' Motion, Plaintiff concedes that her claims against Detective Boutte should be dismissed. *See* R. Doc. 31 at p. 1.

[127] *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).

under a theory of unreasonable seizure or false arrest where a third-party intermediary determines that probable cause exists to support an arrest. However, "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant."[128] Under the holding of *Franks v. Delaware*,[129] the chain of causation remains intact if a law enforcement officer "knowingly and intentionally, or with reckless disregard for the truth," either includes a false material statement in a warrant application or omits material facts from a warrant application.[130] Because "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant[,]"[131] *Franks* cautions that mere "[a]llegations of negligence or innocent mistake" on the part of the affiant officer "are insufficient" to demonstrate a *Franks* violation.[132]

Accordingly, a plaintiff alleging a *Franks* violation for a material omission in a warrant application must demonstrate (1) that the officer's omission was knowing and intentional or reckless and not merely negligent and (2) that the omitted facts are material to a finding of probable cause.[133] "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts

---

[128] *Id.* (quoting *Cuadra*, 626 F.3d at 813).
[129] 438 U.S. 154 (1978).
[130] *Id.* at 155; *Terwilliger*, 4 F.4th at 281 (explaining that *Franks* extends to material omissions).
[131] *Franks*, 438 U.S. at 171.
[132] *Id.*
[133] *See, e.g.*, *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006); *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991).

ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause."[134]

Probable cause is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[135] It "exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense"[136] and it turns "on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[137] To determine probable cause, "courts must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'"[138] Probable cause "is not a high bar"[139] and means a "fair probability," *i.e.*, "something more than a bare suspicion,"[140] that a crime has been committed. The Court addresses the second element, whether the omitted facts are material to a finding of probable cause, before addressing the first element, whether the Officer's omissions were knowing and intentional or reckless and not merely negligent.

---

[134] *Kohler*, 470 F.3d 1113 (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)).

[135] *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

[136] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn*, 242 F.3d at 313.

[137] *Pringle*, 540 U.S. at 371 (quoting *Gates*, 462 U.S. at 232).

[138] *Terwilliger*, 4 F.4th 270 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 588 (2018))

[139] *Wesby*, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

[140] *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999).

###### i.     The Omissions are Not Material to a Finding of Probable Cause.

Plaintiff does not contend that Officer Anderson's affidavit itself lacks probable cause or contains any false allegations.[141]   Accordingly, the Court starts with the baseline assumption that the affidavit as it exists supports a finding of probable cause.[142]   It is the Plaintiff's burden to demonstrate that any omitted details or information, if included in the affidavit, would negate a finding of probable cause.

The allegedly exculpatory facts omitted from the affidavit fall roughly into two different categories: information concerning the motives and credibility of the complaining witnesses—Bailey and Morton—and Plaintiff's alibi defense.  Plaintiff argues that Officer Anderson's affidavit failed to include (1) necessary background information about Bailey's arrest on September 20, 2021 for alleged domestic violence against Nikki Joseph, (2) Bailey's relationship to Plaintiff (*i.e.*, that plaintiff is Bailey's mother-in-law), (3) that Bailey initially claimed to have personally seen the Plaintiff on video taking his things, (4) that Officer Anderson saw a mount for the Ring camera on the front door but did not see the Ring camera itself, (5) that Plaintiff claimed to have been wearing black pants and not shorts the previous day, as Morton claimed, (6) that Officer Anderson spoke on the phone with Plaintiff twice and that Plaintiff denied the allegations and provided an alibi defense that she was meeting with a lawyer at the time of the alleged theft, and (7) that Nikki Joseph had lost one

---

[141]  A facially deficient warrant affidavit is challenged under *Malley v. Briggs*, 475 U.S. 335 (1986).
[142] *See Kohler*, 470 F.3d at 1114 ("[I]t is clear that *Franks* itself was confined to providing a mechanism for challenging a search warrant that was not supported by probable cause but that, due to the inclusion of deliberately falsified allegations in the warrant affidavit, appeared to be supported by probable cause.").

of Plaintiff's cars the day prior on September 21, 2021 and had been acting erratically.[143]   As the Court explains below, none of these omitted details would negate probable cause for the arrest of Plaintiff had they been included in Officer Anderson's Affidavit for Arrest Warrant.   Accordingly, Plaintiff's *Franks* claim necessarily fails as a matter of law.

### a. The Defendants did not omit material information regarding Bailey or Morton.

Plaintiff claims that Officer Anderson's failure to include certain background information about Bailey and his relationship to Plaintiff negates probable cause because, had it been included, it would have demonstrated a motive for Bailey to try to frame Plaintiff for the theft.[144]   That is, according to Plaintiff, had the magistrate judge known that Bailey had just been released from jail on domestic violence charges against Plaintiff's daughter, an inference would naturally have arisen that Bailey was trying to "get back" at Plaintiff, rendering Bailey's account unreliable.   Plaintiff also claims that Bailey's sister, Morton, is, by extension, also unreliable and untrustworthy as a witness.[145]   In sum, Plaintiff contends that had information regarding the connection between Bailey and Plaintiff been included in the affidavit, probable cause would have been lacking because the credibility of Bailey and Morton would be called into doubt and the magistrate judge could have concluded that Bailey had a motive to fabricate the charges.

---

[143] *See* R. Doc. 29-1 at pp. 17–19; R. Doc. 31 at pp. 21–23.
[144] *See* R. Doc. 29-1 at pp. 20–22; R. Doc. 31 at pp. 22–23.
[145] *See* R. Doc. 29-1 at pp. 20–22; R. Doc. 31 at pp. 22–23 ("Obviously, both Bailey and his sister, who was naturally taking his side, had a motive based on his arrest and the other domestic disputes to try to get back at Nikki and her family, including the Plaintiff.").

Plaintiff's argument goes much too far and relies on rank speculation. As stated in the affidavit, Officer Anderson walked through Bailey's residence to locate his property "to no avail."[146]   From that information, it is certainly reasonable to conclude that Bailey was not fabricating the entirety of his allegation.   Further, Plaintiff's daughter, Bailey's estranged wife, confirmed to the investigating officer that property was missing.   That Bailey potentially harbored a grudge against Plaintiff does not negate the probable cause established by Morton's positive identification of Plaintiff, who she knew, as the individual she witnessed entering and exiting Bailey's home with his possessions.   Further, without more, any grudge held by Bailey does not necessarily translate to a grudge held by his sister to the point where she would voluntarily lie to law enforcement as to what she witnessed. Plaintiff summarily states that Bailey's sister "was also a biased witness, given her relationship to her brother and the ongoing disputes between Bailey's family and the Plaintiff's family."[147]   Plaintiff provides no information that the sister was involved in any dispute between the families, nor does Plaintiff provide any further information to support that the sister was biased.   Officer Anderson was entitled to determine the credibility of Morton.   "[T]he police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case."[148] "An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient

---

[146] *See* R. Doc. 30-4, *Joseph Affidavit*, at p. 6.
[147] R. Doc. 29-1 at p. 20.
[148] *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (quoting *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983)).

to supply probable cause to stop the suspect,"[149] unless "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."[150] None of Plaintiff's cited case law is to the contrary.  The possible bias[151] that Bailey may have had to frame Plaintiff is in no way comparable to the unreliability of the witness in *Richardson v. Serpas*,[152] relied on by Plaintiff, which involved an officer's omission from a warrant affidavit that the sole witness to a possible arson was an eight-year-old boy with "a history of starting fires and hearing voices telling him to do so."[153]

Further, that Bailey had been arrested and incarcerated for domestic violence against Plaintiff's daughter makes it plausible to infer that Plaintiff herself had a motive to steal Bailey's property as a way to get back at Bailey for his harm to Plaintiff's daughter.   Moreover, Plaintiff's possible familiarity with Bailey's residence, and Plaintiff's knowledge that Bailey would not be in the house at the time because he was in jail, could further strengthen a finding of probable cause.  Further, that Morton was personally familiar with Plaintiff makes her identification of Plaintiff on video by name (as stated in the affidavit[154]) more reliable because it makes it more likely that Morton would have been able to accurately recognize

---

[149] *Id.* (citing *J.B. v. Washington County*, 127 F.3d 919, 930 (10th Cir. 1997); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986)).

[150] *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)).

[151] As an aside, Plaintiff provides no explanation as to why Morton and Bailey would have a motive to frame Plaintiff as opposed to Joseph, the person directly responsible for landing Bailey in jail.

[152] *Richardson v. Serpas*, No. CIV.A. 11-2911, 2012 WL 1899410 (E.D. La. May 24, 2012) (Barbier, J.).

[153] *Id.* at *7.

[154] *See* R. Doc. 30-4, *Joseph Affidavit*, at p. 6.

Plaintiff.  When the Court includes that information in the Affidavit and considers the Affidavit with the added information, the integrity of the Affidavit remains and probable cause still exists.

Next, Plaintiff contends that Officer Anderson failed to include certain information regarding the Ring camera footage from her affidavit—namely, that Bailey changed his story about personally viewing the footage of Plaintiff entering his house and that Officer Anderson never saw the Ring camera or the footage itself.[155]  When Officer Anderson first spoke with Bailey on September 22, 2021, he claimed that he had seen Plaintiff entering his house and taking his property via the Ring camera feed on his phone.[156]  Later, in conversation with Officer Anderson and Detective Boutte, Bailey advised that his sister, Morton, had been in possession of his phone while he was in jail and she was the one who had seen Plaintiff on video.[157] Plaintiff contends that had Officer Anderson mentioned the alleged inconsistency in Bailey's story in her affidavit, probable cause would have been negated.[158]

The Court disagrees.  Plaintiff ignores that Officer Anderson did not rely on Bailey's account in her affidavit; rather, Officer Anderson included the information that she received directly after interviewing Morton herself.  As stated in the affidavit:

> Ms. Morton informed Officer Anderson that on Tuesday, September 21, 2021, at about 1PM, she observed Ms. Trina Joseph (B/F [dob Redacted]), on the Ring doorbell camera entering the residence at [redacted] Inwood Ave.  Ms.

---

[155] *See* R. Doc. 31 at pp. 19–20, 22–23; R. Doc. 29-1 at pp. 17–20.
[156] R. Doc. 29-13, *First Anderson Video*, at 6:10.
[157] R. Doc. 29-14, *Second Anderson Video*, at 6:24.
[158] *See* R. Doc. 31 at pp. 19–20, 22; R. Doc. 29-1 at pp. 17–20.

> Morton used her brothers' [sic] cell phone to live stream the
> footage.  Ms. Morton observe [sic] Ms. Joseph exit the home
> with several of her brothers [sic] shoe boxes and bags of his
> personal items.  Ms. Morton was able to identify Ms.
> Joseph by name and stated she had on a dark colored shirt
> with black shorts.[159]

Whether or not *Bailey's* story was inconsistent does not negate the probable cause established by Officer Anderson's investigation and interview with Morton and her independent account of what she witnessed.  Moreover, it was well within Officer Anderson's discretion to consider Bailey's credibility and determine whether she believed that the inconsistencies in his story were the result of honest mistake or miscommunication, on the one hand, or of deceit, on the other.  There is no requirement that an officer include every single scrap of information known to them in a warrant affidavit, especially where they, in good faith, adjudge information to be immaterial or irrelevant.[160]  Had Officer Anderson never spoken with Morton and instead relied *solely* upon Bailey's account, Plaintiff's argument might hold more water.  But that is not what happened here.

As for Officer Anderson's omission that she did not personally see a Ring camera on the front door of Bailey's residence, the Court finds that probable cause would not be negated by the inclusion of such information.  Officer Anderson observed the mount on the front door where Bailey claimed the Ring camera had been attached

---

[159] R. Doc. 30-4, *Joseph Affidavit*, at p. 6.
[160] *See United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990) ("[A] requirement that all potentially exculpatory evidence be included in an affidavit . . . would perforce result in perniciously prolix affidavits that would distract police officers from more important duties and render the magistrate's determination of probable cause unnecessarily burdensome.").

at the time of the theft.[161]  Moreover, Morton stated that she was monitoring Bailey's Ring camera on the date in question and personally witnessed Plaintiff enter Bailey's residence multiple times.[162]  Morton was further able to specify the clothing that Plaintiff was wearing and the approximate time that she received the Ring notification.[163]  Officer Anderson included these details in her warrant affidavit.[164]  Further, when Officer Anderson mentioned to Nikki Joseph that her mother, Plaintiff, had been seen on camera entering the Inwood residence, Joseph did not in any way deny that a Ring camera was present on her property.[165]  In sum, given the eyewitness testimony that a Ring camera was present and turned on at the time of the alleged theft and Officer Anderson's observation of the mount for a Ring camera, probable cause would not be negated by including a statement that Officer Anderson did not personally the Ring camera.  Whatever doubts that may be cast on Morton's account by Officer Anderson's inability to confirm that Bailey's front door was equipped with a Ring camera pale in comparison to the substantial evidence included in the affidavit that there was, in fact, a Ring camera on the door at the time of the alleged theft.  Including the omitted information would not negate probable cause.

Plaintiff also contends that Officer Anderson should have included in her warrant affidavit that Plaintiff's account of what she was wearing at the time of the alleged theft differed from Morton's description of what Plaintiff was wearing.[166]

---

[161] R. Doc. 29-13, *First Anderson Video*, at 7:28; R. Doc. 32-3, *Anderson Depo.*, at 54:16–19.
[162] R. Doc. 29-14, *Second Anderson Video*, at 34:10–35:15.
[163] *Id.* at 34:30–35:58.
[164] *See* R. Doc. 30-4, *Joseph Affidavit*, at pp. 6–7.
[165] R. Doc. 29-13, *First Anderson Video*, at 17:50–19:45; R. Doc. 29-14, *Second Anderson Video*, at 11:33–13:21.
[166] *See* R. Doc. 29-1 at pp. 18, 20; R. Doc. 31 at p. 20.

Morton claimed that she saw Plaintiff wearing a dark colored shirt and shorts while Plaintiff claimed that she was wearing a black and gold top with pants that day. Officer Anderson did not include Plaintiff's claim that she was wearing pants the previous day. But reconstructing the warrant affidavit to include such omitted information does not negate probable cause. After all, Morton identified Plaintiff by name and claimed to have watched Plaintiff repeatedly enter and exit Bailey's home. This is not a case of identification of a stranger. Morton knew Plaintiff. Morton's description of Plaintiff's shirt color also corresponds to the color top Plaintiff claims to have been wearing. Even if Plaintiff's self-serving account of her clothing from the previous day was included in the affidavit, probable cause would still be present. There is no genuine dispute—indeed, no dispute at all—that when interviewed, Morton claimed to have seen Plaintiff, who she knew, entering and leaving Bailey's house with boxes of property. Plaintiff's attempt to inflate her claim of what she had been wearing into a material omission fails.

### b. Officer Anderson did not Omit Material Information Regarding Plaintiff's Claimed Alibi Defense.

Plaintiff maintains that had Officer Anderson included Plaintiff's denial of the accusations against her and her claimed alibi defense in the warrant affidavit, probable cause would not have been met.[167] According to Plaintiff, probable cause is negated if the reconstructed warrant affidavit includes Plaintiff's protestation of innocence and assertion that that she was at her lawyer's office at the time of the alleged theft. This argument is unsubstantiated and misconstrues both the probable

---

[167] *See* R. Doc. 29-1 at pp. 18–21; R. Doc. 31 at pp. 12, 19, 23.

cause requirement and *Franks*.   Probable cause "requires only a probability or substantial chance of criminal activity."[168]   That Plaintiff denied the charges against her has little bearing on the probable cause analysis because her denial neither negates the evidence in the affidavit nor even cast doubts on that evidence.   "A suspect's declaration of innocence does not vitiate probable cause."[169]   The upshot of Plaintiff's argument is that probable cause can be negated whenever a suspect denies the allegations against them.[170]   To state the proposition is to refute it.   This is not the law for a reason: the absurdity is apparent.

As for Plaintiff's alibi defense, the Court finds Officer Anderson's omission of that information to be immaterial to a finding of probable cause.   It is hardly surprising that a person accused of a crime denies the allegations against them and claims to have been elsewhere at the time of the alleged offense.   Including Plaintiff's claim that she met with her attorney and stopped for lunch at Whole Foods Market at the time of the theft in the reconstructed warrant affidavit does not negate probable cause.   Had Officer Anderson included Plaintiff's uncorroborated story in her affidavit, the affidavit would still support a finding of probable cause given, *inter alia*, Morton's eyewitness testimony placing Plaintiff, who she knew, at the scene of the crime entering and exiting the house with boxes of property.   That is, under the

---

[168] *Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 780 (5th Cir. 2022) (quoting *Gates*, 462 U.S. at 243 n.13).

[169] *Id.* at 782; *accord Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1221 (10th Cir. 2020) (citation omitted) ("[A] soon-to-be arrestee's bare proclamations of innocence do not" dissipate probable cause).

[170] *Cf. id.* at 781 ("[A] soon-to-be arrestee's naked assertion of self-defense under these circumstances does not vitiate probable cause.   Otherwise, every suspect for a litany of violent crimes could avoid, or delay, arrest by simply proclaiming self-defense.").

totality of the circumstances, there is probable cause to believe that Plaintiff committed an offense.  Probable cause is not a conclusive finding of a suspect's guilt.[171]  That a suspect may be telling the truth and is not guilty beyond a reasonable doubt does not invalidate the probable cause that existed for their arrest.  Plaintiff cites no jurisprudence—and the Court has found none—to support Plaintiff's proposition that probable cause is negated where a suspect provides an uncorroborated alibi.  Such a rule would both incentivize suspects to falsify alibi defenses and disincentive law enforcement officers from communicating with suspects prior to seeking an arrest warrant.  Plaintiff's proposition would see criminals set free not from any blunder of the constable but due to the quick thinking of the suspect.[172]

Plaintiff's more fundamental error is assuming that, under *Franks*, an affiant must state every potentially exculpatory detail known to the affiant.  Plaintiff, in effect, asks this Court to import the requirements of *Brady v. Maryland*[173] into the *Franks* analysis.  *Brady* and its progeny require a prosecutor to disclose to a defendant all material exculpatory evidence;[174] implicit in the holding of *Brady* is that suppression of such evidence deprives a defendant of a fair trial.[175]  The purpose of

---

[171] *See Wesby*, 138 S. Ct. at 588 ("As we have explained, 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" (quoting *Gates*, 462 U.S. at 244)).

[172] *See People v. Defore*, 242 N.Y. 13, 21 (1926) (opinion of the Court by Cardozo, J.) ("The criminal is to go free because the constable has blundered.").

[173] 373 U.S. 83 (1963).

[174] *See id.* at 87; *United States v. Agurs*, 427 U.S. 97, 112–13 (1976); *United States v. Bagley*, 473 U.S. 667, 678 (1985).

[175] *See Agurs*, 427 U.S. at 104 ("A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome

the *Brady* rule is "to ensure that a miscarriage of justice does not occur."[176]  Insofar as *Brady* is concerned with the requirements of due process and ensuring the correctness of a guilty verdict at trial, it makes little sense to graft *Brady*'s trial-focused requirements onto the warrant application process which is concerned with probable cause under the Fourth Amendment, not reasonable doubt.  At the warrant stage, a magistrate judge is not making an affirmative finding of a suspect's guilt; rather, the magistrate is concerned only with whether probable cause exists to effect an arrest and answer a charge.[177]  Further, the omission of potentially exculpatory information in a warrant application does not carry the same consequences as depriving a criminal defendant of exculpatory materials at trial does.  This is in no way to say that an affiant may omit exculpatory information that, if included, would negate probable cause.  Instead, the Court notes that *Franks* and *Brady* are premised on different grounds and that liability under *Franks* is not coterminous with the requirements of *Brady*.  Moreover, negating probable cause is not equivalent to introducing reasonable doubt or "undermin[ing] confidence in the outcome of the trial;"[178] the former requires a greater showing than the latter.[179]  Plaintiff's argument "potentially opens officers to endless conjecture about investigative leads,

---

of the trial."); *see also Bagley*, 473 U.S. at 678 ("[S]uch suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial.").

[176] *Bagley*, 473 U.S. at 676.

[177] *See Wesby*, 138 S. Ct. at 588 ("As we have explained, 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" (quoting *Gates*, 462 U.S. at 244)).

[178] *Bagley*, 473 U.S. at 678.

[179] That there exists a reasonable doubt as to a suspect's guilt does not mean that probable cause does not exist for an arrest.

fragments of information, or other matter that might, if included, have redounded to defendant's benefit."[180]

To the extent that Plaintiff argues that Officer Anderson had an affirmative duty to investigate Plaintiff's claimed alibi prior to seeking a warrant for her arrest, the Court finds no support for such a requirement.  Plaintiff spends much of her briefing arguing that she was not granted an opportunity to come to the station and provide corroboration for her alibi prior to the issuance of the arrest warrant.[181]  But whether or not the Defendants provided Plaintiff such an opportunity does not affect the probable cause determination.  Indeed, the Supreme Court has explained that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."[182] As the Fourth Circuit has noted, requiring police officers to include all potentially exculpatory evidence in a warrant affidavit "would place an extraordinary burden on law enforcement officers who might have to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded."[183]  Moreover, such an obligation imposes potentially crippling delays at a time when speed in obtaining an arrest warrant might be of the essence. Requiring officers to investigate a suspect's claimed alibi necessitates spending

---

[180] *Colkley*, 899 F.2d at 301.

[181] *See* R. Doc. 31 at pp. 15–19.

[182] *Wesby*, 138 S. Ct. at 588; *accord Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

[183] *Colkley*, 899 F.2d at 303.

resources in a possibly futile attempt to prove the innocence of a suspect at a stage where only probable cause is required for a warrant to issue.

Such a concern becomes apparent in the case at hand.  According to Plaintiff, Officer Anderson should have affirmatively investigated her alibi defense before seeking a warrant for her arrest.  Plaintiff claims that Officer Anderson should have "placed calls to NOPD officers stationed at the FJC [Family Justice Center] to confirm or disprove the Plaintiff's alibi"[184] and suggests that Officer Anderson should have asked Plaintiff to meet her in person to explain her side of the story.[185]  In effect, Plaintiff argues that because she raised an alibi defense, Officer Anderson was obligated to investigate and disprove Plaintiff's claims before seeking issuance of a warrant, despite the existence of probable cause.  Plaintiff's contention is specious.  Imposing a duty on police officers to investigate a suspect's alibi despite the existence of probable cause has no basis in *Franks* or in common sense.  *Franks*, after all, concerns false allegations or material omissions of information *known* to the affiant at the time of the affidavit.  Plaintiff's argument would turn *Franks* on its head and render an affiant liable for omitting information *unknown* to the affiant.  The scope of such liability is limitless.  Deputizing law enforcement to serve as defense counsel and as a suspect's own private investigator has nothing to do with *Franks* and no grounding in law.

Finally, Plaintiff contends that Officer Anderson improperly omitted information regarding Bailey's estranged wife Nikki Joseph's erratic behavior on the

---

[184] R. Doc. 29-1 at pp. 20–21.
[185] *See* R. Doc. 31 at pp. 18–19.

day of the alleged theft, including losing of her car on the side of the road.[186]  Plaintiff suggests that Joseph "was obviously a plausible alternative suspect for the alleged theft" given her behavior and her access to the property.[187]  None of this information has anything to do with the probable cause determination that Plaintiff took property from Bailey's residence.  That Joseph was behaving erratically and ditched the car she was driving on the side of the road has no bearing *whatsoever* on whether Plaintiff stole Bailey's property.  Moreover, that Joseph had access to the property does not negate the probable cause determination that it was Plaintiff who took Bailey's property.  Plaintiff's argument, in effect, is that had the magistrate judge known of Joseph's supposedly erratic behavior, he would have concluded that she, not the Plaintiff, was the likely thief.  The mere possibility that Joseph was the thief—based solely on a hunch and speculation—does not eliminate probable cause to believe that Plaintiff was the thief.  Again, Officer Anderson heard eyewitness testimony that it was Plaintiff, not Joseph, who was on video entering the residence and carrying boxes of Bailey's property.  Plaintiff ignores the facts known to Officer Anderson at the time of the affidavit and asks the Court to consider irrelevant information about Joseph.  The Court declines to do so and finds that none of this information about Joseph that was omitted from the affidavit has any relevancy to the probable cause analysis.  Including that information in the Affidavit, the Court finds that probable cause still existed for the issuance of the warrant.

---

[186] *See* R. Doc. 29-1 at p. 20.
[187] R. Doc. 31 at p. 21.

At bottom, Plaintiff's complaints about the sufficiency of the Affidavit for Arrest Warrant prepared by Officer Anderson amount to little more than trivialities and hairsplitting.  When considered all together under the totality of the circumstances, the allegedly exculpatory omissions do not diminish probable cause, let alone completely negate it.  The sum of several zeroes is still zero.  Plaintiff has failed to demonstrate that the Defendants omitted any information that, when added to a reconstructed affidavit, would negate a finding of probable cause.  As such, Plaintiff's § 1983 claim for a *Franks* violation fails as a matter of law.

### ii.     The Alleged Omissions Were Not Knowingly and Intentionally Made or Made With Reckless Disregard for the Truth.

Plaintiff has failed to demonstrate that any of the alleged omissions in the affidavit for her arrest warrant were material in the sense that including them in a reconstructed affidavit would negate probable cause for her arrest.  Consequently, she cannot demonstrate liability under *Franks* for Officer Anderson and Sergeant Kjellin.  Plaintiff also fails to prove a *Franks* violation because Plaintiff has set forth no information suggesting that either Officer Anderson or Sergeant Kjellin knowingly and intentionally made any alleged omission or made an omission with reckless disregard for the truth.  To prove reckless disregard for the truth, the Plaintiff must demonstrate that the Defendants "in fact entertained serious doubts as to the truth."[188] Unlike in *Brady* where the good or bad faith of the government is irrelevant

---

[188] *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

in determining whether a violation has occurred,[189] *Franks* liability requires a showing of purposeful misconduct on the part of the affiant officers.[190]  As the *Franks* Court explained, "[a]llegations of negligence or innocent mistake are insufficient" to trigger liability.[191]  The Court is cognizant that "[d]oubtless it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit."[192]  But the inherent difficulty of such a showing does not alter *Franks'* placement of the burden on the plaintiff to demonstrate the requisite bad intent of the affiant officer.

Plaintiff has presented a colorable argument that Officer Anderson was, at most, negligent in not including certain details in her affidavit.  The relationship between Plaintiff and Bailey may arguably have had some probative value, if only to clarify the nature of the incident.  But such hindsight reveals only an oversight on Officer Anderson's part, not a deliberate and intentional or reckless omission of the truth.  Indeed, Plaintiff points to nothing in the record to show any intentional or reckless omission by Officer Anderson.  If anything, the record demonstrates the opposite.  For example, when asked during her deposition why she did not include

---

[189] *See Brady*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution*." (emphasis added)).

[190] *See Franks*, 438 U.S. at 168 ("The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause[.]"); *id.* at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth[.]").

[191] *Id.*

[192] *Martin*, 615 F.2d at 329.

information that Bailey changed his story about seeing Plaintiff on video at his residence, Officer Anderson explained:

> [W]hen you conduct an investigation, from when he say [sic] he saw to when he said his sister saw, it was unclear if he spoke with his sister prior to talking with me, to where his sister told him the facts of what she saw to where he said "I saw."  It was unclear, so I did not include that.[193]

An officer is entitled to judge the credibility of those before them and to include only those details and facts that they find, in their reasonable judgment, to be relevant to an affidavit.[194]   Officer Anderson's explanation for why she chose not to include Bailey's change in story suggests that she considered the discrepancy in his story and ultimately found that discrepancy to be immaterial or irrelevant.[195]  There is nothing whatsoever to suggest any malicious deliberate concealment of facts or reckless disregard for the truth by Officer Anderson.

Similarly, as for Officer Anderson's omission of Plaintiff's claimed alibi, Plaintiff fails to make any argument that such omission was anything more than negligent or an innocent mistake.  Officer Anderson explained that she chose not to include such details in her affidavit because she was unable to verify any of Plaintiff's

---

[193] R. Doc. 32-3, *Anderson Depo.*, at 51:24–25, 52:1–5.
[194] *Cf. Hart*, 127 F.3d at 443 ("[W]e find that a reasonably competent police officer would have thought that the statement had sufficient internal indicia of reliability to be included in the affidavit without further investigation[.]").
[195] Indeed, Officer Anderson can be heard on video stating that she found Bailey's story "questionable" because he was in jail at the time of the theft.  See R. Doc. 29-13, *First Anderson Video*, at 24:30.  Further, Officer Anderson recognized that a warrant for Plaintiff's arrest would be inappropriate based solely on Bailey's account.  *See* R. Doc. 29-14, *Second Anderson Video*, at 6:15.  Not until Officer Anderson learned that Morton had seen the video did Officer Anderson conclude that a warrant should issue for Plaintiff's arrest.  The Court emphasizes these facts because they show that Officer Anderson did consider Bailey's story contemporaneously with her affidavit but ultimately concluded that Morton was credible.  The facts demonstrate no bad motive or blatant disregard for the truth on Officer Anderson's part in not including Bailey's changed story in her affidavit.

allegations and was unable to verify that she was actually speaking with Plaintiff on the phone.[196]  Officer Anderson further explained that she "can't take information over the phone and just take it at face value without having a person physically come in and provide whatever documentation that they may have."[197]  The Court again finds that nothing in the record points to Officer Anderson's omission being the product of either a deliberate and intentional omission of material facts or a reckless disregard for the truth.  Although the Fifth Circuit has explained that the "requisite intent may be inferred from an affidavit omitting facts that are 'clearly critical' to a finding of probable cause,"[198] for the reasons explained above, none of the omitted facts regarding Plaintiff's alibi are critical to the probable cause analysis; accordingly, the requisite intent cannot be inferred.

Plaintiff fails on both prongs of the *Franks* analysis as she cannot demonstrate that any omitted allegedly exculpatory information would negate probable cause were it to be included in a hypothetical reconstructed warrant affidavit and because she fails to show that the Defendants acted either knowingly and intentionally or with reckless disregard for the truth in omitting information from the affidavit.  As such, Plaintiff has failed to prove that the Defendants violated her Fourth Amendment right against unreasonable seizure.  Because no constitutional violation occurred, Defendants are entitled to summary judgment on their qualified immunity claim. The Court grants Defendant's Motion for Summary Judgment as to Plaintiff's § 1983

---

[196] *See* R. Doc. 32-3, *Anderson Depo.*, at 72:18–25.
[197] *Id.* at 61:20–23.
[198] *Cronan*, 937 F.2d at 165 (citing *Martin*, 615 F.2d at 329).

claims against Officer Anderson, Detective Boutte, and Sergeant Kjellin and dismisses those claims with prejudice.

### 2. *Monell* Liability

Plaintiff initially brought claims against the City of New Orleans and Shaun Ferguson alleging § 1983 liability under *Monell v. New York City Department of Social Services*[199] for exhibiting "a policy, practice, and/or custom of callousness and reckless disregard for the civil rights of residents like the Plaintiff in their failure to adequately screen, hire, train, supervise, and/or discipline employees and police officers."[200] Defendants move to dismiss those claims on the pleadings pursuant to Fed. R. Civ. P. 12(c).[201] In her response to Defendants' Motion, Plaintiff concedes that her *Monell* claim against both the City of New Orleans and Shaun Ferguson should be dismissed.[202] Accordingly, the Court dismisses those claims.

### B. State Law Claims

In addition to her claims under § 1983 for violations of *Franks v. Delaware*, Plaintiff also alleged violations of Louisiana state law for false arrest, wrongful/malicious prosecution, and intentional infliction of emotional distress and violations of Sections 3 and 5 of Article 1 of the Louisiana Constitution of 1974 against Defendants Officer Anderson, Detective Boutte, and Sergeant Kjellin.[203] Plaintiff

---

[199] 436 U.S. 658 (1978).

[200] R. Doc. 19 at ¶ 39.

[201] *See* R. Doc. 30-1 at pp. 4–7.

[202] *See* R. Doc. 31 at p. 1.

[203] *See* R. Doc. 19 at ¶¶ 38, 40. Although Plaintiff included her claim for deprivation of rights under Article I sections 3 and 5 of the Louisiana Constitution in the same paragraph as her federal § 1983 claims, violations of *state* constitutional rights are not cognizable under § 1983, which covers only deprivations of *federal* statutory and constitutional rights. *See, e.g.*, *Monell*, 436 U.S. at 700 ("[T]here can be no doubt that [42 U.S.C. § 1983] was intended to provide a remedy, to be broadly construed,

additionally brought state law claims against the City of New Orleans and Shaun Ferguson for negligent hiring and negligent supervision and claims against the City of New Orleans on a theory of respondeat superior.[204]  Plaintiff has since conceded that her claims against Detective Boutte and Ferguson should be dismissed.[205]  The Defendants move for summary judgment on each of the remaining state law claims, arguing that Plaintiff's failure to demonstrate that Defendants violated her Fourth Amendment rights against unlawful arrest necessarily entails the failure of her state law claims.[206]  The Defendants alternatively argue that should the Court dismiss Plaintiff's federal § 1983 claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state claims, pursuant to 28 U.S.C. § 1367(c), and dismiss those claims without prejudice.[207]

The "general rule"[208] in this Circuit is to decline to exercise supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction."[209]  "[T]his rule is neither mandatory nor absolute"[210] and is within the discretion of the district court to determine after considering the factors enumerated in 28 U.S.C. § 1367(c) as well as the common law factors of "judicial economy, convenience, fairness, and comity."[211]  The relevant

---

against all forms of official violation of *federally protected rights*." (emphasis added)). Accordingly, the Court construes her claims for violations of her state constitutional rights as a separate cause of action.
[204] *See* R. Doc. 19 at ¶¶ 41, 42.
[205] *See* R. Doc. 31 at p. 1.
[206] *See* R. Doc. 30-1 at pp. 19–21.
[207] *See id.* at p. 21.
[208] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002) (quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)).
[209] 28 U.S.C. § 1367(c)(3).
[210] *Amedisys, Inc.*, 298 F.3d at 447 (quoting *Batiste*, 179 F.3d at 227).
[211] *Id.* at 446 (quoting *Batiste*, 179 F.3d at 227).

statutory factors found in section 1367(c) include "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction."[212]

As to the first factor, the Court does not have enough information before it to definitively determine whether Plaintiff's state law claims raise any novel or complex issues of Louisiana law.  Neither the Plaintiff nor the Defendants have briefed the state law claims in much detail.  Indeed, neither party has made any arguments as to Plaintiff's claims under Sections 3 and 5 of Article 1 of the Louisiana Constitution of 1974.  Given the lack of argument on Plaintiff's state law claims, the Court finds that this first factor is neutral.

Next, all of Plaintiff's federal claims have been dismissed.  Accordingly, Plaintiff's state law claims necessarily "substantially predominate" over her federal claims.  Both the second and third factors weigh in favor of the Court declining to exercise jurisdiction over Plaintiff's state law claims.  Lastly, there are no exceptional circumstances here for declining to exercise supplemental jurisdiction.  The fourth factor, thus, weighs in favor of retaining jurisdiction.  In sum, the Court finds that the § 1367(c) factors weigh in favor of declining to exercise jurisdiction.

The Court next considers the common law factors of judicial economy, convenience, fairness, and comity.  On balance, these factors favor declining

---

[212] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (citing 28 U.S.C. § 1367(c)).

supplemental jurisdiction of Plaintiff's state law claims as well.  The judicial economy factor points in both ways.  On the one hand, this case has been pending in this Court for nearly a year and trial is set to occur shortly.  That being said, only minimal adjudication has taken place thus far and the Court has not considered any other dispositive motions other than the instant Motions for Summary Judgment.[213]  As such, the Court finds that this factor is neutral.  Similarly, the Court finds that the convenience factor is neutral here.  This case involves parties and events located in the New Orleans area.  Whether this case is heard in this Court or in Civil District Court in New Orleans has little effect on the convenience of the parties.  As for fairness, the parties have not indicated any reason why it would be unfair for this Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Indeed, Plaintiff did not even address Defendant's argument that the Court should refuse to exercise jurisdiction over her state claims.  There is nothing unfair about having a Louisiana state court hear Louisiana state law claims.[214] Comity "demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped

---

[213] This case is readily distinguishable from *Brookshire Brothers Holding v. Dayco Products, Inc.*, where the Fifth Circuit held that the district court abused its discretion in declining to exercise supplemental jurisdiction over remaining state law claims following the dismissal of the federal claims.  554 F.3d 595, 601–04 (5th Cir. 2009).  In that case, the district court had "decided forty-one dispositive motions, fourteen *Daubert* motions, and seven other motions *in limine*" by the time it chose to decline to exercise supplemental jurisdiction.  *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 Fed. App. 765, 770 (5th Cir. 2015) (quoting *Brookshire Bros.*, 554 F.3d at 598).  The case "generat[ed] more than 1,300 entries in the district court docket," and "[t]rial . . . was continued four times."  *Id.*  Here, by contrast, fewer than fifty docket entries have been generated and the Court has decided only the motions for summary judgment addressed in this Order.  The amount of resources expended by the Court in the case at bar pale in comparison to the expenditures in *Brookshire Brothers*.
[214] *See Enochs*, 641 F.3d at 160 ("[I]t was certainly fair to have had the purely Texas state law claims heard in Texas state court.").

for determinations of state law as are state courts.'"[215]  Given that only Plaintiff's state claims remain in this suit, the adjudication of which involve questions of Louisiana law, the Court finds that comity is best served by refusing to exercise jurisdiction over Plaintiff's state law claims.  Although this Court has spent considerable time and effort reviewing the record evidence and drafting this Order, that familiarity with the case does not necessitate that the Court should continue to exercise jurisdiction over the supplemental claims here.  After all, the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."[216]  Accordingly, the Court finds that consideration of the § 1367(c) factors and the common law factors weighs in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The Court dismisses those claims without prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Partial Summary Judgment[217] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss *Monell* Claims Pursuant to Rule 12(c) and Motion for Summary Judgment on All Claims[218] is **GRANTED.**

---

[215] *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588–89 (5th Cir. 1992)).
[216] *Amedisys, Inc.*, 298 F.3d at 446–47 (quoting *Batiste*, 179 F.3d at 227).
[217] R. Doc. 29.
[218] R. Doc. 30.

**IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 claims against the Defendants are **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's state law claims against the Defendants are **DISMISSED, without prejudice**.

New Orleans, Louisiana, May 18, 2023.

**WENDY B. VITTER**
**United States District Judge**